# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

NO. ___13-60147-CR-Zloch___

HUNT

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1341
18 U.S.C. § 2

FILED by _DB_ D.C.

JUN - 6 2013

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – FT. LAUD.

**UNITED STATES OF AMERICA**

**v.**

**EDWARD MICHAEL DeNIGRIS,**
**WILLIAM DAVID DYER,**
**ANTHONY JOSEPH LAURIA,**
**PAUL JOSEPH GERACI, and**
**LOUIS ANTHONY CUOMO,**

     **Defendants**.

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

1.     Amante Corporation (hereinafter referred to as "Amante") was a foreign corporation that on January 26, 2005 filed with the Florida Division of Corporations, an Application by Foreign Corporation for Authorization to Transact Business in Florida for the purpose of software development, and stated it had been incorporated in Ontario, Canada on September 17, 1996. **EDWARD DeNIGRIS** was the Chairman of the Directors, President, and Registered Agent. The principal place of business was 2425 East Commercial Boulevard, Suite 308, Fort Lauderdale,

Florida 33308.  In the company's Annual Report filed on April 24, 2007, the new principal place of business was 233 Commercial Boulevard, Suite B, Lauderdale-By-The-Sea, Florida 33308.  On September 30, 2009, an Application by Foreign Corporation for Withdrawal of Authority to Transact Business or Conduct Affairs in Florida dated September 29, 2009 was filed and the Florida Division of Corporations listed the status of the company as inactive.

2.      Commonwealth    Capital    Management,    Inc.    (hereinafter    referred    to    as "Commonwealth") was a Florida corporation whose Articles of Incorporation were filed with the Florida Division of Corporations on July 11, 2007.  **EDWARD DeNIGRIS** was the Incorporator, President, and Registered Agent.  The principal place of business was 233 Commercial Boulevard, Suite B, Lauderdale-By-The-Sea, Florida 33308.  On September 24, 2010, the Florida Division of Corporations declared the company inactive because of an administrative dissolution for failing to file its annual report.

3.      Capital    One    Consulting    Inc.    was    a    Florida    corporation    whose    Articles    of Incorporation were filed with the Florida Division of Corporations on July 23, 2008.  **ANTHONY LAURIA** was the President, Secretary, Treasurer, and Registered Agent.  The principal place of business was 606 Misty Oaks Lane, Pompano Beach, Florida 33069.  On June 8, 2009, Articles of Amendment dated June 4, 2009 were filed changing the name of the company to East Coast Bullion Exchange, Inc.  On September 24, 2010, the Florida Division of Corporations declared the company inactive because of an administrative dissolution for failing to file its annual report.

4.      MVC Group, LLC is a New York Limited Liability company that on April 3, 2009 filed with the Florida Division of Corporations a Designation of Registered Agent and Registered Office for Alien Business Organization listing **PAUL GERACI** as the Managing Member, and the

principal office address as 12251 Sand Wedge Drive, Boynton Beach, Florida 33437.

5.      Spin 26, Inc (hereinafter referred to as "Spin 26"), was a Florida corporation whose Articles of Incorporation were filed with the Florida Division of Corporations on September 3, 2008. **EDWARD DeNIGRIS** was the Incorporator, President, and Registered Agent, and **ANTHONY LAURIA** was the Vice President.  The principal place of business was 233 Commercial Boulevard, Suite B, Lauderdale-By-The-Sea, Florida 33308.  On October 6, 2008, Articles of Amendment dated September 29, 2008, were filed declaring that **EDWARD DeNIGRIS** was replaced as President. On November 3, 2008, Articles of Amendment dated September 29, 2008 were filed declaring that **ANTHONY LAURIA** was removed as Vice President.   On January 29, 2009, Articles of Dissolution effective December 31, 2008 were filed and the Florida Division of Corporations listed the status of the company as inactive.

6.      Text 2 Win Mobile, Inc. was a Florida corporation whose Articles of Incorporation were filed with the Florida Division of Corporations on August 15, 2007.  **ANTHONY LAURIA** was the President, Secretary, Treasurer, and Registered Agent.  The principal place of business was 2601 S. Course Drive #202, Pompano Beach, Florida 33069.  On September 26, 2008, the Florida Division of Corporations declared the company inactive because of an administrative dissolution for failing to file its annual report.

## COUNTS 1 to 6
(Mail Fraud, 18 U.S.C. § 1341)

1.     The General Allegations set forth in paragraphs one (1) through six (6) of this Indictment are re-alleged and incorporated herein by reference.

2.     From in or about May 2008, through on or about October 29, 2009, in Broward County, in the Southern District of Florida and elsewhere, the defendants,

**EDWARD MICHAEL DeNIGRIS,
WILLIAM DAVID DYER,
ANTHONY JOSEPH LAURIA,
PAUL JOSEPH GERACI, and
LOUIS ANTHONY CUOMO,**

and other persons known and unknown to the Grand Jury, did devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and for the purpose of executing, and attempting to execute, such scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by mail and by commercial interstate carrier according to the direction thereon, certain matters and things.

### The Purpose and Object of the Scheme and Artifice

3.     The purpose and object of the scheme and artifice was for the defendants and their accomplices to unlawfully enrich themselves by using materially false and fraudulent statements, and by omitting and concealing material facts, in order to sell shares of stock of Amante, Spin 26, and Text 2 Win Mobile, Inc. to investors, and when the investors' funds were received in the bank accounts of Amante, Commonwealth, Spin 26, and Text 2 Win Mobile, Inc. the funds would be

4

withdrawn and converted to the personal use and benefit of the defendants and their accomplices.

## The Manner and Means of the Scheme and Artifice

4.   The manner and means by which the defendants and their accomplices sought to accomplish the purpose and object of the scheme and artifice included, among others, the following:

5.   **EDWARD DeNIGRIS** would direct the day-to-day activities of his co-defendants and accomplices at Amante and Commonwealth.

6.   **WILLIAM DYER, ANTHONY LAURIA,** and **LOUIS CUOMO** would work for **EDWARD DeNIGRIS** as salesmen at Commonwealth.

7.   **PAUL GERACI** would work for **EDWARD DeNIGRIS** as a manager at Commonwealth.

8.   The defendants and their accomplices would establish and occupy an office for both Amante and Commonwealth at 233 Commercial Boulevard, Suite B, Lauderdale-By-The-Sea, Florida 33308, for the purpose of conducting telemarketing telephone sales operations, commonly known as "boiler room" operations, and would furnish the office with telephones, telefax machines and other equipment to facilitate telemarketing sales.

9.   At the direction of **EDWARD DeNIGRIS** and **PAUL GERACI**, the salespersons, including **WILLIAM DYER, ANTHONY LAURIA,** and **LOUIS CUOMO**, would place telephone calls to people throughout the United States and solicit them to purchase shares of Amante, Spin 26, and Text 2 Win Mobile, Inc. stock.

10.   The defendants and their accomplices would engage in high-pressure sales tactics telling investors that circumstances existed that required immediate investments in order to avoid missing important opportunities to make high profits.

11.     The defendants and their accomplices would tell investors that Amante, Spin 26, and Text 2 Win Mobile, Inc. owned or possessed sophisticated software that would allow persons to gamble over the Internet using their computers and cellular telephones.

12.     The defendants and their accomplices would tell investors that Amante was completing its filings with the U.S. Securities and Exchange Commission ("SEC") that would permit Amante to conduct an inital public offering ("IPO") of its stock.

13.     The defendants and their accomplices would tell investors that the IPO of Amante stock was imminent and that quick action was required in order to purchase the stock before the IPO occurred.

14.     The defendants and their accomplices would tell investors that when Amante stock began trading publicly, the price per share would skyrocket and Amante stock could trade as much as one hundred times higher than the price at which the investors could now purchase the stock.

15.     The defendants and their accomplices would tell investors that Amante would soon be merging with or forming an alliance with Spin 26, Text 2 Win Mobile, Inc. or other entities, which would cause Amante stock to greatly increase in value.

16.     The defendants and their accomplices, in order to convince investors to purchase stocks, would tell investors that they were recommending and selling Amante, Spin 26, and Text 2 Win Mobile, Inc. stocks to their own family and friends.

17.     The defendants and their accomplices, in order to demonstrate their own commitment and belief in the value of the stocks, would tell investors that they had invested, and were continuing to invest, their own personal money in the stocks they were selling.

18.     The defendants and their accomplices would tell investors that the defendants and

their accomplices were mortgaging their own residences in order to secure funds to purchase additional shares of stock.

19.     The defendants and their accomplices would urge investors to withdraw funds from their bank, IRA, and retirement accounts, and take out second mortgages or lines of credit on their residences in order to purchase the stocks they were selling.

20.     The defendants and their accomplices would tell investors that upon the imminent commencement of the Amante IPO, the investors could quickly sell their Amante stock, reap their large profits, and repay any mortgages or loans that they may have incurred.

21.     The defendants and their accomplices would send investors, by telefax or FedEx, copies of stock purchase agreements and instructions for wire transferring funds or sending checks by FedEx to the bank accounts of Amante, Spin 26, and Text 2 Win Mobile, Inc.

22.     The defendants and their accomplices would send new account applications to investors to complete and return, which applications would then be forwarded to a company that would open an account and facilitate the quick sale of the investors' Amante stock.

23.     When the Amante IPO did not occur as they had claimed, the defendants and their accomplices would tell investors that unforeseen events had occurred but that the Amante IPO was still imminent.

24.     The defendants and their accomplices would solicit additional stock purchases by telling investors who had already purchased Amante stock that more money was needed to pay attorney fees concerning Amante's filing with the SEC, which filing was allegedly almost completed.

25.     The defendants and their accomplices would solicit additional stock purchases by telling investors who had already purchased Amante stock that more money was needed to pay

market makers to promote interest in Amante thereby increasing the value of the stock.

26.     The defendants and their accomplices would warn investors that failure to purchase additional stock would deprive Amante of critical funds needed to accomplish the IPO, thereby risking the loss of all the money the investors had previously invested.

27.     The defendants and their accomplices would engage in telephone conversations with potential investors throughout the United States and would knowingly make false statements of material facts and would knowingly omit and conceal material facts in order to induce the potential investors to send money to Amante, Commonwealth, Spin 26, and Text to Win Mobile, Inc.  The false statements of material facts and the omitted and concealed material facts included, but were not limited to, the following:

## False Statements of Material Facts

a.     that an initial public offering of Amante's stock was imminent, and would occur within weeks;

b.     that investors must immediately purchase Amante stock in order to ensure that they would own the stock before the Amante IPO occurred and the price of the stock would skyrocket;

c.     that the investors' funds would be immediately used to pay expenses necessary to accomplish the Amante IPO;

d.     that the investors' funds were urgently needed to pay market makers to promote the sale of Amante stock at the time of the Amante IPO;

e.     that the defendants and their accomplices had purchased and were continuing to purchase stock in the companies they were selling;

f.      that the defendants and their accomplices were mortgaging their own residences in order to raise funds to purchase additional shares of the stocks they were selling;

g.      that Amante, Spin 26, and Text 2 Win Mobile, Inc. owned or possessed sophisticated software that would allow persons to gamble over the Internet using their computers and cellular telephones;

h.      that Amante, Spin 26, and Text 2 Win Mobile, Inc. had current or imminent business prospects that would cause their stocks to greatly increase in value;

i.      that the defendants and their accomplices would receive no commissions on their sales of stock;

### Concealed and Omitted Material Facts

j.      that Amante had not filed a registration statement with the SEC to even begin the process of conducting an IPO;

k.      that conducting an IPO is a process that usually takes months and often years to complete even after a registration statement has been filed with the SEC;

l.      that Amante, Spin 26, and Text 2 Win Mobile, Inc. had no current or future prospects to support the claimed value of their stocks; and

m.      that the defendants and their accomplices were withdrawing the majority of the investor funds from various accounts and were using those investor funds for their own personal benefit.

28.      The defendants and their accomplices, after receiving the investors' funds, would transfer those funds among various accounts that they controlled, including accounts of Capital One

Consulting Inc. and MVC Group, LLC, and would withdraw those funds to use not for business purposes, but for their own personal benefit, which included, among other things, buying a Jaguar, a diamond ring, and a Rolex watch.

29.     The defendants and their accomplices, after receiving the investors' funds, would use the funds to purchase bank checks, each check in a large amount, including one check in the amount of $160,000.00, and they would cash the bank checks at a check cashing store paying a fee of up to two percent (2%) of the amount of the check, and would use the remaining cash for themselves and others.

30.     The defendants and their associates would tell disillusioned and disgruntled investors who complained about their investment and expressed a desire to contact an attorney, the SEC, or law enforcement officials, that they would return some or all of their money if the investors would sign a hold harmless and confidentiality agreement that would place restrictions upon the investors providing information to any government entity or regulatory agency.

### The Delivery by Mail and Commercial Interstate Carrier

On or about the dates listed as to each count set forth below, the defendants, for the purpose of executing, and attempting to execute, such scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by mail and by commercial interstate carrier according to the direction thereon, certain matters and things particularly described in each count set forth below:

| Count | Approximate Date | Description of Matter and Thing Delivered |
|---|---|---|
| 1 | July 15, 2008 | Envelope containing an Amante stock certificate from defendant **DeNIGRIS** in Fort Lauderdale, Florida, delivered by FedEx, a commercial interstate carrier, according to the direction thereon, to |

M.S. in St. Petersburg, Florida.

| | | |
|---|---|---|
| 2 | July 18, 2008 | Envelope containing an Amante Stock Purchase Agreement from defendant **DeNIGRIS** in Florida, delivered by FedEx, a commercial interstate carrier, according to the direction thereon, to E.C. in Texas. |
| 3 | November 5, 2008 | Envelope containing a NSM Securities, Inc. New Account Application from M.S. in St. Petersburg, Florida, delivered by DHL Express, a commercial interstate carrier, according to the direction thereon, to defendant **CUOMO** in Lauderdale-By-The-Sea, Florida. |
| 4 | January 14, 2009 | Envelope containing an Amante letter to all investors from defendant **DeNIGRIS** in Fort Lauderdale, Florida, delivered by the United States Postal Service, according to the direction thereon, to M.S. in St. Petersburg, Florida. |
| 5 | March 3, 2009 | Envelope containing a check for $10,000.00 payable to Amante from R.L. in New Hampshire, delivered by FedEx, a commercial interstate carrier, according to the direction thereon, to defendant **DYER** at Amante Corporation in Florida. |
| 6 | April 3, 2009 | Envelope containing a check for $300,000.00 payable to Amante from K.R. in California, ~~New Hampshire~~, delivered by the United States Postal Service, according to the direction thereon, to defendant **DYER** at Amante Corporation in Florida. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

**COUNTS 7 to 55**
(Wire Fraud, 18 U.S.C. § 1343)

1.      The General Allegations set forth in paragraphs one (1) through six (6) of this Indictment are re-alleged and incorporated herein by reference.

2.      From in or about May 2008, through on or about October 29, 2009, in Broward County, in the Southern District of Florida and elsewhere, the defendants,

**EDWARD MICHAEL DeNIGRIS,
WILLIAM DAVID DYER,
ANTHONY JOSEPH LAURIA,
PAUL JOSEPH GERACI, and
LOUIS ANTHONY CUOMO,**

and other persons known and unknown to the Grand Jury, did devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds.

**The Purpose and Object of the Scheme and Artifice**

3.      The purpose and object of the scheme and artifice was for the defendants and their accomplices to unlawfully enrich themselves by using materially false and fraudulent statements, and by omitting and concealing material facts, in order to sell shares of stock of Amante, Spin 26, and Text 2 Win Mobile, Inc. to investors, and when the investors' funds were received in the bank accounts of Amante, Commonwealth, Spin 26, and Text 2 Win Mobile, Inc. the funds would be

12

withdrawn and converted to the personal use and benefit of the defendants and their accomplices.

### The Manner and Means of the Scheme and Artifice

4.     The manner and means by which the defendants sought to accomplish the objective of the purpose and object of the scheme and artifice included, among others, the allegations set forth in paragraphs five (5) through thirty (30) in the Manner and Means of the Scheme and Artifice in Counts One (1) through Six (6) of this Indictment, which are re-alleged and incorporated herein by reference.

### The Wire Communication

On or about the dates listed as to each count set forth below, the defendants, the purpose of executing, and attempting to execute, such scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds particularly described in each count set forth below:

| Count | Approximate Date | Description of Writings, Signs, Signals, and Sounds Transmitted |
|-------|------------------|----------------------------------------------------------------|
| 7 | June 25, 2008 | Wire transfer of $10,000.00 by S.S. from account in California to Bank of America in Florida, account no. x8846 in the name of Text 2 Win Mobile, Inc. at the request of defendant **CUOMO**. |
| 8 | June 30, 2008 | Wire transfer of $20,000.00 by S.S. from account in California to Bank of America in Florida, account no. x8846 in the name of Text 2 Win Mobile, Inc. at the request of defendant **CUOMO**. |
| 9 | July 2008 | Telephone conversation between defendant **DeNIGRIS** in Florida and E.C. in Texas. |
| 10 | July 2008 | Telephone conversation between defendant **LAURIA** in Florida and K.S. in California. |

| 11 | July 2008 | Telephone conversation between defendant **CUOMO** in Florida and K.S. in California. |
| 12 | July 16, 2008 | Telefax transmission of an Amante Stock Purchase Agreement from defendant **DeNIGRIS** in Florida to E.C. in Texas. |
| 13 | July 17, 2008 | Wire transfer of $40,000.00 by E.C. from account in Texas to Wachovia Bank in Florida, account no. x5901 in the name of Commonwealth at the request of defendant **DeNIGRIS**. |
| 14 | August 1, 2008 | Wire transfer of $20,000.00 by K.S. from account in California to Wachovia Bank in Florida, account no. x5901 in the name of Commonwealth at the request of defendant **LAURIA** and defendant **CUOMO**. |
| 15 | August 1, 2008 | Wire transfer of $60,000.00 directed by K.S. from account of J.B. in California to Wachovia Bank in Florida, account no. x5901 in the name of Commonwealth at the request of defendant **LAURIA** and defendant **CUOMO**. |
| 16 | August 4, 2008 | Wire transfer of $5,000.00 by K.S. from account in California to Wachovia Bank in Florida, account no. x5901 in the name of Commonwealth at the request of defendant **LAURIA** and defendant **CUOMO**. |
| 17 | August 4, 2008 | Electronic mail with Amante stock purchase agreement and wiring instructions sent by defendant **DeNIGRIS** in Florida to R.L. in New Hampshire. |
| 18 | August 5, 2008 | Wire transfer of $30,000.00 by R.L. from account in New Hampshire to Wachovia Bank in Florida, account no. x5901 in the name of Commonwealth at the request of defendant **DeNIGRIS**. |
| 19 | August 7, 2008 | Wire transfer of $30,000.00 by R.L. from account in New Hampshire to Wachovia Bank in Florida, account no. x5901 in the name of Commonwealth at the request of defendant **DeNIGRIS**. |
| 20 | August 8, 2008 | Wire transfer of $10,000.00 directed by K.S. from account of J.B. in California to Wachovia Bank in Florida, account no. x5901 in the name of Commonwealth at the request of defendant **LAURIA**. |
| 21 | August 13, 2008 | Wire transfer of $20,000.00 by R.L. from account in New Hampshire to Wachovia Bank in Florida, account no. x5901 in the name of |

| | | Commonwealth at the request of defendant **DeNIGRIS**. |
|---|---|---|
| 22 | August 14, 2008 | Wire transfer of $17,000.00 by R.L. from account in New Hampshire to Wachovia Bank in Florida, account no. x5901 in the name of Commonwealth at the request of defendant **DeNIGRIS**. |
| 23 | August 20, 2008 | Wire transfer of $35,000.00 by K.S. from account in California to Wachovia Bank in Florida, account no. x5901 in the name of Commonwealth at the request of defendant **LAURIA**. |
| 24 | August 25, 2008 | Wire transfer of $293,000.00 by S.M. from account in California to Wachovia Bank in Florida, account no. x5901 in the name of Commonwealth at the request of defendant **CUOMO**. |
| 25 | August 27, 2008 | Wire transfer of $47,000.00 by S.M. from account in California to Wachovia Bank in Florida, account no. x5901 in the name of Commonwealth at the request of defendant **CUOMO**. |
| 26 | August 2008 | Telephone conversation between defendant **CUOMO** in Florida and S.M. in California. |
| 27 | August 2008 | Telephone conversation between defendant **LAURIA** in Florida and K.S. in California. |
| 28 | September 2, 2008 | Wire transfer of $30,000.00 by S.M. from account in California to Wachovia Bank in Florida, account no. x5901 in the name of Commonwealth at the request of defendant **CUOMO**. |
| 29 | September 9, 2008 | Electronic mail with Spin 26, Inc. wiring instructions sent by defendant **DeNIGRIS** in Florida to R.L. in New Hampshire. |
| 30 | September 10, 2008 | Wire transfer of $40,000.00 by R.L. from account in New Hampshire to Wachovia Bank in Florida, account no. x9000 in the name of Spin 26, Inc. at the request of defendant **DeNIGRIS**. |
| 31 | September 11, 2008 | Electronic mail with Spin 26, Inc. stock purchase agreement and wiring instructions sent by defendant **DeNIGRIS** in Florida to R.L. in New Hampshire. |
| 32 | September 11, 2008 | Wire transfer of $40,000.00 by S.M. from account in California to Wachovia Bank in Florida, account no. x9000 in the name of Spin 26, Inc. at the request of defendant **CUOMO**. |

15

| 33 | September 12, 2008 | Wire transfer of $30,000.00 by R.L. from account in New Hampshire to Wachovia Bank in Florida, account no. x9000 in the name of Spin 26, Inc. at the request of defendant **DeNIGRIS**. |
|---|---|---|
| 34 | October 14, 2008 | Wire transfer of $90,000.00 by S.M. from account in California to Wachovia Bank in Florida, account no. x9042 in the name of Amante at the request of defendant **CUOMO**. |
| 35 | October 15, 2008 | Wire transfer of $125,000.00 by S.M. from account in California to Wachovia Bank in Florida, account no. x9042 in the name of Amante at the request of defendant **CUOMO**. |
| 36 | October 2008 | Telephone conversation between defendant **CUOMO** in Florida and E.H. in Texas. |
| 37 | November 4, 2008 | Wire transfer of $300,000.00 by E.H. from account in Texas to Wachovia Bank in Florida, account no. x9042 in the name of Amante at the request of defendant **CUOMO**. |
| 38 | November 5, 2008 | Wire transfer of $200,000.00 by E.H. from account in Texas to Wachovia Bank in Florida, account no. x9042 in the name of Amante at the request of defendant **CUOMO**. |
| 39 | December 19, 2008 | Wire transfer of $35,000.00 by K.R. from account in California to Wachovia Bank in Florida, account no. x9042 in the name of Amante at the request of defendant **CUOMO**. |
| 40 | December 22, 2008 | Wire transfer of $15,000.00 by K.R. from account in California to Wachovia Bank in Florida, account no. x9042 in the name of Amante at the request of defendant **CUOMO**. |
| 41 | January 2, 2009 | Telephone conversation between defendant **CUOMO** in Florida and E.H. in Texas. |
| 42 | January 2, 2009 | Wire transfer of $50,000.00 by E.H. from account in Texas to Wachovia Bank in Florida, account no. x9042 in the name of Amante at the request of defendant **CUOMO**. |
| 43 | January 8, 2009 | Wire transfer of $25,000.00 by S.M. from account in California to Wachovia Bank in Florida, account no. x9042 in the name of Amante at the request of defendant **CUOMO**. |
| 44 | January 14, 2009 | Wire transfer of $30,000.00 by S.M. from account in California to |

|   |   | Wachovia Bank in Florida, account no. x9042 in the name of Amante at the request of defendant **CUOMO**. |
|---|---|---|
| 45 | January 16, 2009 | Wire transfer of $30,000.00 by K.R. from account in California to Wachovia Bank in Florida, account no. x9042 in the name of Amante at the request of defendant **CUOMO**. |
| 46 | January 20, 2009 | Wire transfer of $50,000.00 by E.H. from account in Texas to Wachovia Bank in Florida, account no. x9042 in the name of Amante at the request of defendant **CUOMO**. |
| 47 | January 29, 2009 | Wire transfer of $30,000.00 by K.R. from account in California to Wachovia Bank in Florida, account no. x9042 in the name of Amante at the request of defendant **CUOMO**. |
| 48 | January 2009 | Telephone conversation between defendant **DYER** in Florida and E.C. in Texas. |
| 49 | February 5, 2009 | Telephone conversation between defendant **DYER** in Florida and E.H. in Texas. |
| 50 | February 12, 2009 | Telephone conversation between defendant **DYER** in Florida and E.H. in Texas. |
| 51 | February 2009 | Telephone conversation between defendant **DYER** in Florida and K.R. in California. |
| 52 | March 2009 | Telephone conversation between defendant **DYER** in Florida and S.M. in California. |
| 53 | March 2009 | Telephone conversation between defendant **DYER** in Florida and K.R. in California. |
| 54 | March 2009 | Telephone conversation between defendant **DeNIGRIS** in Florida and K.R. in California. |
| 55 | April 2009 | Telephone conversation between defendant **DYER** in Florida and K.R. in California. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 56
(Conspiracy to Commit Mail Fraud and Wire Fraud, 18 U.S.C. § 1349)

1.      The General Allegations set forth in paragraphs one (1) through six (6) of this Indictment are re-alleged and incorporated herein by reference.

### The Conspiracy

2.      From in or about May 2008, through on or about October 29, 2009, in Fort Lauderdale, Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**EDWARD MICHAEL DeNIGRIS,**
**WILLIAM DAVID DYER,**
**ANTHONY JOSEPH LAURIA,**
**PAUL JOSEPH GERACI, and**
**LOUIS ANTHONY CUOMO,**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States of America, that is:

a.      to devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and for the purpose of executing, and attempting to execute, such scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, to knowingly cause to be delivered by mail and by commercial interstate carrier according to the direction thereon, certain matters and things, in violation of Title 18, United States Code, Section 1341 (Mail Fraud); and

18

b.      to devise and intend to devise a scheme and artifice to defraud and for

obtaining money and property by means of materially false and fraudulent pretenses, representations,

and promises, knowing that they were false and fraudulent when made, and for the purpose of

executing such scheme and artifice to defraud and for obtaining money and property by means of

materially false and fraudulent pretenses, representations, and promises, to knowingly transmit and

cause to be transmitted by means of wire communication in interstate and foreign commerce, certain

writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section

1343 (Wire Fraud).

### The Purpose and Object of the Conspiracy

3.      The purpose and object of the conspiracy was for the defendants and their co-

conspirators to unlawfully enrich themselves by using materially false and fraudulent statements, and

by omitting and concealing material facts, in order to sell shares of stock of Amante, Spin 26, and

Text 2 Win Mobile, Inc. to investors, and when the investors' funds were received in the bank

accounts of Amante, Commonwealth, Spin 26, and Text 2 Win Mobile, Inc. the funds would be

withdrawn and converted to the personal use and benefit of the defendants and their co-conspirators.

### The Manner and Means of the Conspiracy

4.      The manner and means by which the defendants and their co-conspirators sought to

achieve the purpose and object of the conspiracy included, among others, the allegations set forth

in paragraphs five (5) through thirty (30) in the Manner and Means of the Scheme and Artifice in

Counts One (1) through Six (6) of this Indictment, which are re-alleged and incorporated herein by reference.

All in violation of Title 18, United States Code, Section 1349.

_____

FOREPERSON

*Thomas J. Mulihill fr*

WIFREDO A. FERRER
UNITED STATES ATTORNEY

*William T. Shockley*

WILLIAM T. SHOCKLEY
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO.** _____ |
| **vs.** | |
| Edward Michael DeNigris et al., | **CERTIFICATE OF TRIAL ATTORNEY\*** |
| **Defendants.** _____/ | **Superseding Case Information:** |

**Court Division:** (Select One)

| | | |
|---|---|---|
| __ Miami | __ Key West | New Defendant(s)     Yes _____  No _____ |
| _✓_ FTL | __ WPB     __ FTP | Number of New Defendants |
| | | Total number of counts _____ |

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:     (Yes or No)     No
    List language and/or dialect     _____

4.  This case will take     _10_     days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)                                   (Check only one)

    | | | | | | |
    |---|---|---|---|---|---|
    | I | 0 to 5 days | _____ | Petty | _____ |
    | II | 6 to 10 days | _✓_ | Minor | _____ |
    | III | 11 to 20 days | _____ | Misdem. | _____ |
    | IV | 21 to 60 days | _____ | Felony | _✓_ |
    | V | 61 days and over | | | |

6.  Has this case been previously filed in this District Court? (Yes or No)     No
    If yes:
    Judge: _____     Case No.
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?     (Yes or No)     No
    If yes:
    Magistrate Case No.     _____
    Related Miscellaneous numbers:     _____
    Defendant(s) in federal custody as of     _____
    Defendant(s) in state custody as of     _____
    Rule 20 from the     _____     District of     _____

    Is this a potential death penalty case? (Yes or No)     No

7.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?     _____ Yes     _✓_ No

8.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?     _____ Yes     _✓_ No

_William T. Shockley_
William T. Shockley
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No./Court No. A5500088

\*Penalty Sheet(s) attached

REV 4/8/08

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:  EDWARD MICHAEL DeNIGRIS**

**Case No:**_____

**Counts #: 1 - 6**

**Mail Fraud**

**18 U.S.C. § 1341**

**\*Max. Penalty:**            20 years' imprisonment, $250,000 fine

**Counts #: 7 - 55**

**Wire Fraud**

**18 U.S.C. § 1343**

**\*Max. Penalty:**            20 years' imprisonment, $250,000 fine

**Count #: 56**

**Conspiracy to Commit Mail Fraud and Wire Fraud**

**18 U.S.C. § 1349**

**\* Max.Penalty:**            20 years' imprisonment, $250,000 fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** **WILLIAM DAVID DYER**

**Case No:** _____

**Counts #: 1 - 6**

   **Mail Fraud**

   **18 U.S.C. § 1341**

**\*Max. Penalty:**          20 years' imprisonment, $250,000 fine

**Counts #: 7 - 55**

   **Wire Fraud**

   **18 U.S.C. § 1343**

**\*Max. Penalty:**          20 years' imprisonment, $250,000 fine

**Count #: 56**

   **Conspiracy to Commit Mail Fraud and Wire Fraud**

   **18 U.S.C. § 1349**

**\* Max.Penalty:**          20 years' imprisonment, $250,000 fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:  ANTHONY JOSEPH LAURIA**

**Case No:** _____

**Counts #: 1 - 6**

   **Mail Fraud**

   **18 U.S.C. § 1341**

**\*Max. Penalty:**          20 years' imprisonment, $250,000 fine

**Counts #: 7 - 55**

   **Wire Fraud**

   **18 U.S.C. § 1343**

**\*Max. Penalty:**          20 years' imprisonment, $250,000 fine

**Count #: 56**

   **Conspiracy to Commit Mail Fraud and Wire Fraud**

   **18 U.S.C. § 1349**

**\* Max.Penalty:**          20 years' imprisonment, $250,000 fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name:** **PAUL JOSEPH GERACI**

**Case No:** _____

**Counts  #: 1 - 6**

   **Mail Fraud**

    **18 U.S.C. § 1341**

**\*Max. Penalty:**        20 years' imprisonment, $250,000 fine

**Counts  #: 7 - 55**

   **Wire Fraud**

    **18 U.S.C. § 1343**

**\*Max. Penalty:**        20 years' imprisonment, $250,000 fine

**Count  #: 56**

   **Conspiracy to Commit Mail Fraud and Wire Fraud**

    **18 U.S.C. § 1349**

**\* Max.Penalty:**        20 years' imprisonment, $250,000 fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** LOUIS ANTHONY CUOMO

**Case No:**_____

**Counts #: 1 - 6**

   **Mail Fraud**

   **18 U.S.C. § 1341**

**\*Max. Penalty:**              20 years' imprisonment, $250,000 fine

**Counts #: 7 - 55**

   **Wire Fraud**

   **18 U.S.C. § 1343**

**\*Max. Penalty:**              20 years' imprisonment, $250,000 fine

**Count #: 56**

   **Conspiracy to Commit Mail Fraud and Wire Fraud**

   **18 U.S.C. § 1349**

**\* Max.Penalty:**              20 years' imprisonment, $250,000 fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**